## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|                              |   |                        |
|------------------------------|---|------------------------|
| JEFFREY SCHLOSSER,           | : |                        |
| Plaintiff,                   | : | No. 3:20-cv-433 (SRU)  |
|                              | : |                        |
| v.                           | : |                        |
|                              | : |                        |
| DENISE WALKER, et al.,       | : |                        |
| Defendants.                  | : |                        |
|                              | : |                        |

## INITIAL REVIEW ORDER

Jeffrey Schlosser ("Schlosser"), currently confined at Cheshire Correctional Institution in Cheshire, Connecticut and proceeding *pro se*, filed the instant complaint under 42 U.S.C. § 1983 against the following eighteen defendants, all of whom work at New Haven Correctional Center ("NHCC"): Deputy Warden Denise Walker, Deputy Warden Jeanette Maldonado, Counselor Supervisor Tiriolo, Captain Russell, Lieutenant Norfleet, and Officers Brooks (female), Rodriguez, Baldwin, Brooks (male), Matthews, Black, Belica, Holness, Heinz, Lacroix, Zack, Clinton, and Sanders (collectively, "Defendants"). *See* Compl., Doc. No. 1, at 1–4. He sues them in their individual and official capacities. *Id*. at 1.

Schlosser principally challenges Defendants' use of cell phones in the correctional facility, and alleges that they violated Department of Correction Administrative Directives 2.17 and 6.7; Connecticut General Statutes §§ 53a-174, 53a-174a, and 53a-174b; Title II of the Americans with Disabilities Act ("ADA"); 42 C.F.R. § 51.7; and the Eighth and Fourteenth Amendments. *See id.* at 5. Schlosser seeks damages as well as declaratory and injunctive relief. *Id*. at 21–23.

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b). Although detailed allegations are not required, the complaint must include enough facts to afford the defendants fair notice of the claims and the grounds upon which they are based. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). In addition, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Conclusory allegations will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude afforded to *pro se* litigants).

## I.     Allegations[1]

Six months into his confinement as a pretrial detainee, Schlosser saw the female Officer Brooks using a cell phone in violation of Administrative Directive 2.17, which prohibits cell phones in correctional facilities. *See* Compl., Doc. No. 1, at 5 ¶ 1, 7 ¶ 17. When she realized that Schlosser had seen her, she threatened him with bodily harm. *Id.* at 5 ¶ 1.

Schlosser also observed the following officers using their cell phones on the following

---

[1] The facts are drawn from the amended complaint, and I assume them to be true and draw all reasonable reference in Schlosser's favor. *See Ashcroft*, 556 U.S. at 678–79.

dates: Officer Rodriguez on December 28, 2019, between 7:00 p.m. and 8:00 p.m., *id.* at 5 ¶ 2; Officer Baldwin on January 11, 2020 at 10:00 p.m., *id.* at ¶ 3; the male Officer Brooks on December 26, 2019, *id.* at ¶ 4; Officer Matthews on January 24, 2020 during afternoon/evening recreation in the dayroom, *id.* at ¶ 5; Officer Black on January 25, 2020, *id.* at ¶ 6; Officer Belica on January 25, 2020, *id.* at 6 ¶ 7; Officer Holness on January 26, 2020, *id.* at ¶ 8; Officer Matthews on January 26, 2020, *id.* at ¶ 9; Officer Heinz in the afternoon of January 26, 2020, *id.* ¶ 10; Officer Lacroix on January 31, 2020 between 8:00 p.m. and 9:30 p.m., *id.* at ¶ 11; Officer Zack with Officer Matthews on February 2, 2020 during afternoon dayroom recreation, *id.* at ¶ 12; Officer Clinton on February 2, 2020 during night recreation, *id.* at ¶ 13; and Officer Sanders on December 30, 2019 during dayroom recreation, *id.* at ¶ 14.

On New Year's Eve, Schlosser's cell was "unnecessarily" shaken down. *Id.* at 7 ¶ 23. Two correctional officers told Schlosser that "the order came from above them as a warning," and that "some people might retaliate in a physical manner" if he continued to file inmate requests and grievances. *See id.* at 7–8 ¶ 23.

In the first two weeks of January 2020, Schlosser met with Walker, Maldonado, and Tiriolo to discuss the officers' use of cell phones. *See id.* at 7 ¶ 15. They told Schlosser that he "should remember whose house [he] live[s] in," and his inmate requests were returned late with a notation that there was no evidence to support his allegations. *Id.* That evening, Schlosser met with Russell and Norfleet. *Id.* at ¶ 16. Norfleet threatened to designate Schlosser as a gang member, and Russell was angry, but nothing was done to address the issue. *Id.*

Schlosser also informed Walker, Maldonado, Tiriolo, Russell, and Norfleet that staff members were violating Conn. Gen. Stat. §§ 53a-174, 53a-174a and 53a-174b, which criminalize

3

the bringing of certain items into a correctional facility, but they did nothing in response.  *Id.* at 11, ¶¶ 1–5.

Schlosser claims that, because Defendants were preoccupied with their phones, "they were too busy to write work orders for broken or malfunctioning toilets, unsanitary conditions . . . [or] for repair or maintenance of any deficient equipment in NHCC."  *Id.* at 8 ¶ 26.  He also alleges that he witnessed mail being left in the bubble and not distributed because the officers were "preoccupied illegally."  *Id.* at 8 ¶ 27.

Schlosser further contends that, although Administrative Directive 6.7 provides that signs should be posted at all facility entrances that state that (a) all visitors and vehicles may be searched for contraband and (b) it is illegal to bring contraband into the facility, there is no sign on the Sally port entrance.  *See id.* at 10 ¶ 1.  Schlosser notified Walker, Maldonado, and Tiriolo of the absence of a sign, but they did not investigate or search the facility for contraband.  *Id.* at ¶ 2.

## II.     Analysis

Schlosser asserts claims for violations of various administrative directives, state statutes, Title II of the ADA, the Eighth Amendment, and the Fourteenth Amendment.  I address each claim in turn.

### A.     Administrative Directives

Schlosser alleges that Defendants violated Administrative Directives 2.17 and 6.7 by bringing cell phones into the facility and using them there.  Failure to comply with an administrative directive, however, does not on its own give rise to a claim under 42 U.S.C. § 1983.  *Harris v. Taylor,* 441 F. App'x 774, 775 (2d Cir. 2011) (summary order); *see also Osuch*

*v. St. John*, 2018 WL 5778243, at *4 (D. Conn. Nov. 2, 2018) ("Because a failure to follow a Department of Correction directive does not give rise to a section 1983 claim, any claim based on St. John's alleged violation of Administrative Directives 8.1 and 8.5 is dismissed.").  For that reason, those claims are **dismissed** pursuant to 28 U.S.C. § 1915A(b)(1).

      B.    <u>Americans with Disabilities Act</u>

Schlosser also alleges that Defendants discriminated against him in violation of Title II of the ADA, 42 U.S.C. § 12101, *et seq.*, by failing to provide a "safe environment" with working toilets or a "positive, constructive atmosphere that reduces recidivism."  Compl., Doc. No. 1, at 20.

Title II of the ADA declares that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity."  42 U.S.C. § 12132.  To state a cognizable ADA claim, Schlosser must establish three factors: (1) that he is a qualified person with a disability; (2) that the defendants are considered an entity subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from the defendant's program, services, or activities, or was otherwise discriminated against because of his disability.  *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

To establish that he is a "qualified individual with a disability," Schlosser must demonstrate "that he has a physical or mental impairment" and "that such impairment substantially limits one or more of [his] major life activities."  *Andino v. Fischer*, 698 F. Supp. 2d 362, 378 (S.D.N.Y. 2010) (internal quotation marks and citations omitted).  "Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing,

eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).

In this case, Schlosser conclusorily alleges that he suffers from a "serious mental illness." Compl., Doc. No. 1, at 15.  Because he has not specified which impairment he suffers from or how that impairment impacts any major life activities, Schlosser has not sufficiently alleged the first prong of the ADA inquiry.

Moreover, Schlosser has failed to plausibly allege the third prong.  "A qualified individual can base a discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation."  *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal citations omitted). Schlosser has put forth no facts to support any of the three theories; his conclusory statement that Defendants discriminated against him is insufficient.

Moreover, to the extent he is suing Defendants in their individual capacities, those claims are not authorized under the ADA.  *Goonewardena v. New York*, 475 F. Supp. 2d 310, 321 (S.D.N.Y. 2007) ("Suits against individuals in their personal capacities are not permitted under the ADA.").  His ADA claim is therefore **dismissed** pursuant to 28 U.S.C. § 1915A(b)(1).

C.  Fourteenth Amendment – Equal Protection

Schlosser further alleges that he was denied equal protection of the law because correctional officers are allowed to illegally bring cell phones into the facility whereas he is not. Compl., Doc. No. 1, at 14.  That claim is also not colorable.

The Equal Protection Clause protects individuals from arbitrary or invidious discrimination.  *Petitpas v. Martin*, 2018 WL 5016997, at *5 (D. Conn. Oct. 15, 2018) (citing

6

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–40 (1985)).  It does not mandate identical treatment for each individual; rather, it requires that "all persons similarly situated should be treated alike."  *City of Cleburne*, 473 U.S. at 439–40.  Accordingly, to state an equal protection claim, "a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination."  *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).  The individuals with whom Schlosser attempts to compare himself "must be similarly situated in all material respects."  *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 64 (2d Cir. 1997).  "Conclusory allegations of disparate treatment" will not suffice.  *Hamzik v. Office for People with Developmental Disabilities*, 859 F. Supp. 2d 265, 280 (N.D.N.Y. 2012).

In the complaint at bar, Schlosser compares himself to correctional staff.  Schlosser and the correctional officers, however, are not similarly situated for multiple reasons—most obviously, because Schlosser is incarcerated and the correctional officers are not.  *Joyce v. Hanney*, 2009 WL 563633, at *6 (D. Conn. Mar. 4, 2009) ("Here, plaintiff is comparing his treatment to that of a correctional officer. Prisoners and correctional staff do not have an extremely high level of similarity."); *Berryman v. Granholm*, 343 F. App'x 1, 5 (6th Cir. 2009) ("The equal protection claim fails because . . . prison guards and prisoners are not similarly situated"); *Murray v. Dosal*, 150 F.3d 814, 818 (8th Cir. 1998) ("Prisoners are not similarly situated to non-prisoners.").  Because there is no factual basis for Schlosser's equal protection claim, Schlosser's equal protection claim is **dismissed** pursuant to 28 U.S.C. § 1915A(b)(1).

D.    Fourteenth Amendment – Excessive Force

Schlosser further contends that Defendants violated his rights under the Eighth

Amendment.  *See* Compl., Doc. No. 1, at 15.  He specifically alleges that he experienced "severe

anxiety" when: (1) his cell was shaken down on New Year's Eve; (2) Brooks threatened him

with bodily harm; (3) Walker, Maldonado, and Tiriolo threatened him during their meeting; and

(4) Norfleet and Russell threatened to affiliate him as a gang member and warned him of

"possibly getting injured" if that happened.  *Id*.

Because Schlosser was sentenced on January 15, 2020 and because the foregoing

incidents occurred prior to that time, Schlosser was a pretrial detainee for purposes of any claims

arising from those events.  *See Inmate Information*, CT DEP'T OF CORR.,

ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=269683 (last visited July 22, 2020).

Accordingly, those claims are governed by the Due Process Clause of the Fourteenth

Amendment rather the Eighth Amendment.  *See Darnell v. Piniero*, 849 F.3d 17, 29 (2d Cir.

2017).

Schlosser also alleges that "[i]f an officer was on the phone and you interrupted them for

anything[,] they would get mad sometimes leaving you locked in your cell because they were too

busy on the phone."  Compl., Doc. No. 1, at 15.  Although Schlosser does not specify when those

events occurred, construing all inferences in his favor, I will assume that he was a pretrial

detainee at all relevant times.  Accordingly, I construe that claim as a Fourteenth Amendment

claim as well.

Construing his claim as an excessive force claim under the Fourteenth Amendment, the

claim cannot stand.  Although Schlosser alleges that he was threatened, he does not allege that

physical force was used against him.  *Barnes v. Harling*, 368 F. Supp. 3d 573, 592 (W.D.N.Y. 2019) (noting that, to bring a claim for excessive use of force under the Fourteenth Amendment, a pretrial detainee must establish "that the force purposely or knowingly used against him was objectively unreasonable'") (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)).

Moreover, although several district courts in this circuit have held, in the Fourth Amendment context, that "verbal threats, combined with the brandishing of [a] weapon, could be unreasonable and therefore constitute excessive force," Schlosser does not allege that any weapons were involved.  *Gerard v. City of New York*, 2019 WL 4194220, at *3 (S.D.N.Y. Sept. 3, 2019) (citations omitted) (collecting cases).  Therefore, any excessive force claim is **dismissed** pursuant to 28 U.S.C. § 1915A(b)(1).

  E.  Fourteenth Amendment – Deliberate Indifference

To the extent that Schlosser claims that Walker, Maldonado, Tiriolo, Russell, and Norfleet violated his Fourteenth Amendment rights by being deliberately indifferent to his health and safety, that claim is cognizable and may proceed.  Any deliberate indifference claim against the remaining defendants, however, is not viable and is dismissed.

To state a claim for deliberate indifference under the Fourteenth Amendment, Schlosser must first satisfy the "objective prong"—that "the conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to his health."  *See Darnell v. Piniero*, 849 F.3d 17, 29 (2d Cir. 2017) (internal citations omitted).  Second, Schlosser must prove the "means rea prong"—"that [the defendants] acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though [the defendants] knew, or should have known, that condition imposed an

excessive risk to health or safety." *Id.* at 35.[2]  The mens rea requirement is evaluated "from the

perspective of a reasonable officer on the scene, including what the officer knew at the time, not

with the 20/20 vision of hindsight." *Kingsley*, 135 S. Ct. at 2473.  Negligence is insufficient to

satisfy the subjective prong.  *See Darnell v. Piniero*, 849 F.3d 17, at 36 ("[A]ny § 1983 claim for

a violation of due process requires proof of a *mens rea* greater than mere negligence.").

In the present case, Schlosser alleges that, because Defendants were using cell phones,

they were not attentive to their duties and thus failed to provide him with a safe and secure

environment.  *See, e.g.,* Compl., Doc. No. 1, at 18.  Schlosser further alleges that, because the

correctional officers were using their phones, they were "too busy to write work orders for

broken or malfunctioning toilets, unsanitary conditions, or a work order for repair or

maintenance of any deficient equipment in NHCC." *Id*. at 8 ¶ 26.  The complaint additionally

notes that there were "mice and rats nests" under the bunk beds, as well as torn mattresses with

bed bugs and lice.  *Id*. at 20 ¶ 1.

As the Second Circuit has observed, "[u]nsanitary conditions, especially when coupled

with other mutually enforcing conditions, such as poor ventilation and lack of hygienic items (in

particular, toilet paper), can rise to the level of an objective deprivation." *Darnell v. Pineiro*, 849

F.3d 17, 30 (2d Cir. 2017).  In *Darnell*, the Court specifically held that a combination of prison

---

[2] In *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472–73 (2015), the Supreme Court held that a pretrial detainee need only satisfy an objective standard to prevail on an excessive force claim—that is, a pretrial detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable."  Applying *Kingsley*, the Second Circuit in *Darnell v. Pinerio* held that the same objective analysis governs claims of deliberate indifference.  849 F.3d 17, 35–36 (2d Cir. 2017).  Those claims include failure to protect and unconstitutional conditions of confinement claims.  *See id*. at 33 n.9; *Taylor v. City of New York*, 2018 WL 1737626, at *12 (S.D.N.Y. Mar. 27, 2018) ("Although *Darnell* involved a Fourteenth Amendment challenge to a prisoner's conditions of confinement, its holding applies with equal measure to failure to protect claims.").

conditions, which included "inoperable toilets and filthy cells" as well as verbal abuse, could rise

to the level of an objective constitutional deprivation.  *See id*. at 31–32.  Because those

conditions have been alleged here, I conclude that Schlosser has sufficiently pled the objective

component of a Fourteenth Amendment claim.

With respect to the subjective component, the complaint alleges that, when Walker,

Maldonado, Tiriolo, Russell, and Norfleet were informed of the "violations," they did not take

any corrective action.  Compl., Doc. No. 1, at 11, ¶¶ 1–3.  Although the complaint does not

specify that they were informed of the unsanitary conditions, construing all inferences in

Schlosser's favor, I conclude that the factual allegations are sufficient to plausibly allege that

Walker, Maldonado, Tiriolo, Russell, and Norfleet recklessly failed to act with reasonable care to

guarantee Schlosser's health and safety.  The Fourteenth Amendment claim against those

defendants based on NHCC's unsanitary conditions will therefore proceed.

Because Schlosser has put forth no allegations suggesting that any of the other defendants

had a sufficiently culpable state of mind, the Fourteenth Amendment claims against the

remaining defendants are **dismissed** pursuant to 28 U.S.C. § 1915A(b)(1).

F.     First Amendment - Retaliation

To the extent Schlosser brings a First Amendment retaliation claim based on the

shakedown of his cell and the threats from Brooks, Walker, Maldonado, Tiriolo, Norfleet, and

Russell, that claim is not cognizable.

To state a valid First Amendment retaliation claim, Schlosser must allege "(1) that the

speech or conduct at issue was protected, (2) that the defendant took adverse action against the

plaintiff, and (3) that there was a causal connection between the protected speech and the adverse

action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quoting *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015)).  Because "virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act," the Second Circuit has instructed courts to approach retaliation claims with "skepticism and particular care."  *Samuels v. Strange*, 2012 WL 4754683, at *5 (D. Conn. Oct. 4, 2012) (quoting *Dawes*, 239 F.3d at 491).

Here, Schlosser alleges that he filed inmate requests and grievances about correctional officers' cell phone use. *See* Compl., Doc. No. 1, at 6 ¶ 15, 8 ¶ 23.  Filing grievances is a protected activity, and Schlosser has therefore sufficiently pled the first prong of a retaliation claim. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) ("His claimed conduct— namely, his filing of a grievance and attempt to find inmates to represent the grievants—is constitutionally protected.").

Schlosser has also sufficiently pled the third prong, that is, a causal connection between the grievances and the actions at issue.  Schlosser alleges that Walker, Maldonado, and Tiriolo told him to remember "whose house [he] live[s] in" when his grievances concerning cell phone use were returned to him.  *See* Compl., Doc. No. 1, at 6 ¶ 15.  He further alleges that, on that same day, Russell and Norfleet threatened to affiliate him as a gang member and warned him that he may possibly get "injured" if that happened.  *Id*. at 6, ¶ 16, 15 ¶ 2.  Moreover, around that same time frame, Schlosser's cell was allegedly "unnecessarily" shaken down as a warning "from above" and he was advised that "some people might retaliate in a physical manner" if he continued to file requests and grievances.  *See id*. at 7, ¶ 23.  Construing all inferences in his

favor, I conclude that those factual allegations plausibly plead the third prong of a retaliation claim.

With respect to Brooks' threat, however, Schlosser has not pled any facts connecting her threat to his grievances.  Significantly, Schlosser does not allege that he had filed any grievances by that time.  Accordingly, any retaliation claim against Officer Brooks is dismissed.

The question remains whether Schlosser has sufficiently pled the second element—an adverse action—with respect to Walker, Maldonado, Tiriolo, Norfleet, and Russell.  The Second Circuit has held that "only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Wrobel v. County of Erie*, 692 F.3d 22, 31 (2d Cir. 2012) (citation omitted).  "Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001).

"Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." *Id.* (citation omitted)*.*  A prisoner pursuing a retaliation claim must not rest on "wholly conclusory" allegations, but rather must allege "specific and detailed" supporting facts.  *Dolan*, 794 F.3d at 295 (citation omitted).

Under some circumstances, verbal threats may constitute adverse action.  *Treizon Lopez v. Semple*, 2019 WL 2548136, at *4 (D. Conn. June 20, 2019) (citations omitted).  In evaluating whether a verbal threat rises to the level of an adverse action, courts consider the specificity of the threat and the context in which the threat was made.  *Id.*  "[V]ague intimations of some

unspecified harm generally will not rise to the level of adverse action for the purposes of a First Amendment retaliation claim." *Bumpus v. Canfield*, 495 F. Supp. 2d 316, 326 (W.D.N.Y. 2007).

Applying the foregoing principles, I conclude that Walker, Maldonado, and Tiriolo's statement that Schlosser should remember whose house he lives in, even when liberally construed and read in the light most favorable to Schlosser, is nothing more than a vague intimation of an unspecified harm and thus does not support a retaliation claim. Indeed, courts in this circuit have determined that threats far more direct and specific do not constitute an adverse action. *See, e.g.*, *Kemp v. LeClaire*, 2007 WL 776416, at *15 (W.D.N.Y. Mar. 12, 2007) (identifying no adverse action when a correctional officer told a prisoner that the prisoner's "day was coming," that the prisoner would "be sent to [his] mother in a black box" and that the prisoner would "get [his] black ass kicked"); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 432–33, 434 (S.D.N.Y. 2010) (identifying no adverse action when a correctional officer told a prisoner to "wait till he put his hands on" the prisoner and, on another occasion, entered the prisoner's cell, "held his right gloved fist [to the prisoner's] face, [and] threatened [him] by saying that one day he and [the prisoner] will party"); *Torres v. Wright*, 2018 WL 1175408, at *5 (D. Conn. Mar. 6, 2018) (identifying no adverse action when a prisoner was threatened to be placed in punitive segregation if he did not stop complaining). Moreover, Schlosser does not allege that any action followed that statement, which "while not dispositive, weighs against a finding that [the] alleged threat constitutes adverse action." *Treizon Lopez v. Semple*, 2019 WL 2548136, at *5 (D. Conn. June 20, 2019).

Russell and Norfleet's threat to affiliate Schlosser as a gang member, as well as their warning that possible injury may result, likewise do not qualify as adverse actions under the First

Amendment.  That threat, too, is less direct and specific than others that courts have determined to not constitute adverse action.  *See, e.g., Kemp*, 2007 WL 776416, at *15.  Moreover, Schlosser does not allege that Russell or Norfleet carried through on their threat, which weakens his claim. *Treizon Lopez*, WL 2548136, at *5.

With respect to the cell shakedown and the warning of possible retaliation in a "physical manner," the Supreme Court has held that the Fourth Amendment's prohibition on unreasonable searches does not apply to cell searches.  *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). Applying that ruling, courts in this circuit have held that "a retaliatory cell search is insufficient to support a First Amendment retaliation claim."  *Salahuddin v. Mead*, 2002 WL 1968329, at *5 (S.D.N.Y. Aug. 26, 2002) (collecting cases).   Accordingly, the cell search cannot support Schlosser's retaliation claim.  The threat of possible "physical consequences" is also too vague to rise to the level of an adverse action.  *See Kemp*, 2007 WL 776416, at *15.  All retaliation claims are therefore **dismissed** pursuant to 28 U.S.C. § 1915A(b)(1).

G.    Negligence

The complaint additionally asserts that Defendants were grossly negligent when they were using their cell phones at work.  Schlosser details his negligence claims under a section captioned "42 C.F.R. 5.17."  Because Title 42 of the Code of Federal Regulations, entitled Public Health does not contain a section 5.17, I construe his negligence claims only as ones brought under Connecticut state law.

In Connecticut, negligence claims against state employees in their individual capacities for damages are barred by Conn. Gen. Stat. § 4-165(a), which states: "No state officer or employee shall be personally liable for damages or injury, not wanton or reckless or malicious,

15

caused in the discharge of his duties or within the scope of his employment." As construed by Connecticut courts, "wanton, reckless, or malicious" conduct is "more than negligence" and "more than gross negligence." *Martin v. Brady*, 261 Conn. 372, 379 (2002). Because Schlosser complains only of actions that Defendants took within the scope of their employment, his state law claim for negligence against Defendants in their individual capacities for damages is **dismissed** pursuant to 28 U.S.C. § 1915A(b)(2).

       H.    <u>State Statutes</u>

Schlosser further argues that Defendants violated three Connecticut criminal statutes, Conn. Gen. Stat. §§ 53a-174, 53a-174a and 53a-174b, by bringing cell phones into a correctional facility. Compl., Doc. No. 1, at 13. Those claims also fail, because Schlosser cannot bring a federal suit for violation of those state statutes.

The Connecticut Supreme Court has held that, unless private enforcement is expressly stated in a statute, there is a presumption in Connecticut that private enforcement does not exist. *See Provencher v. Town of Enfield*, 284 Conn. 772, 777 (2007). The burden is on the plaintiff to overcome that presumption and show that the statute creates an implied right of action. *Id.* at 777–78.

Here, the three criminal statutes do not reference a private right of action, and Schlosser has alleged no facts suggesting that a private right of action was intended. Accordingly, I conclude that none of the identified statutes provides an express or implied private right of action. *See Ward v. Housatonic Area Regional Trans. Dist.*, 154 F. Supp. 2d 339, 358–59 (D. Conn. 2001) (no private right of action under Connecticut criminal statute when there was "no

private cause of action contemplated by" it).   All claims premised on violations of sections 53a-174, 53a-174a and 53a-174b are therefore **dismissed** pursuant to 28 U.S.C. § 1915A(b)(1).

  I. <u>Joinder</u>

  In a declaration filed on June 17, 2020, Schlosser alleges that he has been incarcerated at Cheshire Correctional Institution since March 16, 2020, and that he has witnessed "several officers and medical staff committing crimes while on state property."  Doc. No. 10, at 1.  He specifies that twenty-two individuals, none of whom are named as defendants in his complaint, "violated Connecticut General Statute 53a-174b and any federal codes, regulations, and acts as well."  *Id*. at 1–2.

  In a declaration filed on July 29, 2020, Schlosser also states that, on July 25, 2020, he witnessed an officer with a smart watch.  Doc. No. 11, at 1.  Schlosser notified Officer Gurrera of the smart watch and informed him that "it was a crime," and Gurrera responded with physical threats.  *Id*.  When Schlosser indicated that he would file a complaint against Gurrera, Gurrera replied, "If I catch you I'm breaking your arms."  *Id*.  Gurrera is not a named defendant in Schlosser's complaint, nor is any officer at Cheshire.

  To the extent Schlosser seeks to join Gurrera and the other individuals listed in his declarations as parties in this action, that is not permitted under Federal Rule of Civil Procedure 20.  Rule 20 permits joinder of multiple defendants in one action only if: (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences;" and (2) "any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).

17

"What will constitute the same transaction or occurrence under the first prong of Rule 20(a) is approached on a case by case basis." *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (citation omitted). "In construing the term 'transaction or occurrence' under Rule 20, many courts have drawn guidance from the use of the same term in Rule 13(a), applying to compulsory counterclaims." *Barnhart v. Town of Parma*, 252 F.R.D. 156, 160 (W.D.N.Y. 2008).

As the Second Circuit has observed in the Rule 13 context, whether a counterclaim arises out of the same transaction or occurrence as the original claim depends upon the "logical relationship" of the claims, and whether the "essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978).

Applying the foregoing principles, I conclude that the requirements for joinder have not been satisfied here. The allegations in the complaint center on Schlosser's time as a pretrial detainee at NHCC; the allegations in the declarations, by contrast, occurred in Cheshire Correctional Institute after Schlosser was sentenced. Moreover, the threats raised in the July 29, 2020 declaration are distinguishable from those alleged in his complaint. Accordingly, the actions discussed in the declarations implicate individuals who would have been improperly joined, in violation of Federal Rule of Civil Procedure 20. For those reasons, Schlosser's claims arising from his time at Cheshire are **dismissed without prejudice** to Schlosser pursuing the claims in a separate action.

J.      Official Capacity Claims

The Eleventh Amendment bars claims for damages against state officials in their official

capacities, unless the state has waived that immunity or Congress has abrogated it. *Kentucky v.*

*Graham*, 473 U.S. 159, 167, 169 n.14 (1985). Accordingly, because section 1983 does not

abrogate state sovereign immunity, *Quern v. Jordan*, 440 U.S. 332, 332 (1979), and because

Schlosser has not alleged facts suggesting that Connecticut has waived immunity, the federal law

claims against Defendants in their official capacities are **dismissed** pursuant to 28 U.S.C. §

1915A(b)(2).

K.      Injunctive Relief Claims

Schlosser's claims for injunctive relief also cannot proceed. In the Second Circuit, "an

inmate's transfer from a prison facility generally moots claims for declaratory and injunctive

relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006).

Accordingly, because Schlosser is currently incarcerated in Cheshire, and because all of the

actions at issue took place in NHCC where each of the defendants work, his injunctive relief

claims are moot and **dismissed** pursuant to 28 U.S.C. § 1915A(b)(1). *Id.*

**III.     Motion for Appointment of Counsel**

Schlosser additionally filed a motion for appointment of *pro bono* counsel pursuant to 28

U.S.C. § 1915. Doc. No. 4. The motion, however, appears to have been filed in the wrong case;

Schlosser identifies the defendant as Hunchu Kwak and states that he is asserting a claim for

violation of patient rights. Because that is not a claim raised in the complaint, and because Kwak

is not a defendant in this case, the motion is **denied without prejudice** to refiling with the

correct details.

19

**CONCLUSION**

For the foregoing reasons, all claims based on the administrative directives, the ADA, the

First Amendment, and sections 53a-174, 53a-174a and 53a-174b, as well as Schlosser's request

for injunctive relief, are **DISMISSED** under 28 U.S.C. § 1915A(b)(1).  Schlosser's negligence

claims against Defendants in their individual capacities for damages are **DISMISSED** under 28

U.S.C. § 1915A(b)(2), as are his claims for damages against Defendants in their official

capacities.  Schlosser's claims relating to his time at Cheshire Correctional Institution are

**DISMISSED** without prejudice to Schlosser pursuing the claims in a separate action.

The case will proceed on the Fourteenth Amendment claim for deliberate indifference

against Walker, Maldonado, Tiriolo, Russell, and Norfleet for damages in their individual

capacities.  All other Fourteenth Amendment claims are **DISMISSED** pursuant to 28 U.S.C. §

1915A(b)(1).  If Schlosser believes he can allege facts to cure the deficiencies identified in this

ruling, he may file a motion to amend and attach an amended complaint within thirty (30) days

from the date of this order.

Schlosser's motion for appointment of counsel [**Doc. No. 4**] is **DENIED**, without

prejudice.

The Court enters the following orders:

(1)      **The Clerk shall** verify the current work addresses for defendants Walker,

Maldonado, Tiriolo, Russell, and Norfleet with the Department of Correction Office of Legal

Affairs, mail a waiver of service of process request packet to him at the address provided within

**twenty-one (21) days** of this Order, and report to the court on the status of the waiver requests

on the thirty-fifth day after mailing.  If a defendant fails to return the waiver request, the Clerk

20

shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)     T**he Clerk shall** send Schlosser a copy of this Order.

(3)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     The defendants shall file his or her response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If he or she chooses to file an answer, he or she shall admit or deny the allegations and respond to the cognizable claim recited above.  He or she also may include all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order.  Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If Schlosser changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  Schlosser must give notice of a new address even if he is incarcerated.

Schlosser should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Schlosser has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Schlosser should also notify the defendants or the attorney for the defendants of his new address.

(9)     Schlosser shall utilize the Prisoner Efiling Program when filing documents with the court.  Schlosser is advised that the Program may be used only to file documents with the court.  As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10)     The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Schlosser.

So ordered.

Dated at Bridgeport, Connecticut, this 17th day of August 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge